# 𝔍𝔫 𝔱𝔥𝔢 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 ℭ𝔬𝔲𝔯𝔱 𝔬𝔣 𝔉𝔢𝔡𝔢𝔯𝔞𝔩 ℭ𝔩𝔞𝔦𝔪𝔰

No. 11-31C, No. 11-360C
(Filed:   March 14, 2014)

| | |
|---|---|
| * * * * * * * * * * * * *<br>*<br>WESTON/BEAN JOINT VENTURE, *<br>*<br>Plaintiff, *<br>*<br>v. *<br>*<br>THE UNITED STATES OF AMERICA, *<br>*<br>Defendant. *<br>*<br>* * * * * * * * * * * * * | RCFC 56(a);<br>Summary Judgment;<br>FAR 52.236-2(a);<br>Differing Site Conditions;<br>Defective Specifications;<br>Maintenance Dredging |

*Michael H. Payne*, Cohen, Seglias, et al, Philadelphia, PA, for plaintiff.

*Jeffrey David Klingman*, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER DENYING CROSS MOTIONS FOR SUMMARY JUDGMENT

These consolidated cases arise out of a contract between the plaintiff, Weston/Bean Joint Venture (hereinafter "WB"), and the Army Corps of Engineers, for dredging of the Miami River and disposal of contaminated sediments.   The cases are before the Court on the parties' cross motions for summary judgment.

In its complaint and briefs, WB alleges that when it began to perform its work under the contract, the subsurface conditions it found were materially different from those indicated in the contracting documents.   Specifically, WB alleges that while the contract indicated that the sediments it would be required to dredge and process would consist of fine or coarse particles less than one to two inches in size, the actual sediments WB encountered contained significant amounts of large gravel, as well as cobbles and boulders.   Compl. (No. 11-31) (hereinafter "Compl. 1") ¶¶ 67-73, 96-98; Pl.'s Resp. 9-11.   It further claims that these allegedly unforeseeable conditions required it to incur significant excess costs related to the processing and disposal of the sediments.   Compl. 1 ¶¶ 106-113, 116-119; Compl. (No. 11-360) (hereinafter "Compl. 2") ¶ 83; Pl.'s Resp. 11-13.   WB also claims that certain work that the Army Corp of Engineers directed it to perform in connection with the project constituted a constructive change, that the government provided defective specifications for the project which resulted in damage to certain seawalls, that the government breached its implied duty to cooperate, that it unreasonably failed to grant extensions of time to complete work, and that the government improperly retained

or assessed liquidated damages.   Compl. 1 ¶¶ 102-105, 118; Compl. 2 ¶¶ 70-74, 80, 102, 132-137; Pl.'s Resp. 11-75.   WB seeks an equitable adjustment of the contract amount, a time extension of 348 days, and $12,423,937.23 in damages, plus interest, costs and attorney fees.   Pl.'s Resp. 1-2.

Both WB and the government have submitted voluminous briefs and exhibits in support of their cross motions for summary judgment.   In addition, the Court held oral argument on the cross motions on March 7, 2014.   For the reasons set forth below, the Court has concluded that there exist disputed issues of material fact which render summary judgment inappropriate.   Further, the Court has concluded that the proper resolution of plaintiff's claims would benefit from full development of the record at trial.   Accordingly, the cross motions for summary judgment are denied.

## DISCUSSION

### A.   Jurisdiction

The Court has jurisdiction over WB's contract claims under the Tucker Act. 28 U.S.C. § 1491(a)(1) (conferring jurisdiction on the Court of Federal Claims to hear "any claim against the United States founded . . . upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort").

### B.   Standard for Summary Judgment

The standards for granting summary judgment are well established.   Summary judgment may be granted where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.   Rules of the Court of Federal Claims (RCFC) 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).   A fact is material if it "might affect the outcome of the suit under the governing law." Id. at 248.   An issue is genuine if it "may reasonably be resolved in favor of either party."   Id. at 250.

The moving party bears the burden of establishing the absence of any genuine issue of material fact, and all significant doubts regarding factual issues must be resolved in favor of the party opposing summary judgment.   Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390 (Fed. Cir. 1987).   "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts."   Id. at 1391.   Further, the court should act with caution in granting summary judgment and may deny summary judgment "where there is reason to believe that the better course would be to proceed to a full trial."   Anderson, 477 U.S. at 255.

### C.   Summary Judgment is Inappropriate; the Adjudication of WB's Claims Would Benefit From Full Development of the Record at Trial.

The gravamen of WB's complaint consists of a "Type I" differing site conditions claim

based on the alleged existence of "subsurface or latent physical conditions at the site which differ materially from those indicated in [the] contract." FAR 52.236–2(a); Int'l Tech. Corp. v. Winter, 523 F.3d 1341, 1348 (Fed. Cir. 2008); see also Renda Marine, Inc. v. United States, 509 F.3d 1372, 1376 (Fed. Cir. 2007) (differentiating Type I and Type II differing site conditions). A contractor seeking to "establish entitlement to an equitable adjustment by reason of a Type I differing site condition . . . must prove, by a preponderance of the evidence, that the conditions indicated in the contract differ materially from those [the contractor] encounter[ed] during performance.'" Randa/Madison Joint Venture III v. Dahlberg, 239 F.3d 1264, 1274 (Fed. Cir. 2001) (quoting H.B. Mac, Inc. v. United States, 153 F.3d 1338, 1345 (Fed. Cir. 1998); see also Stuyvesant Dredging Co. v. United States, 834 F.2d 1576, 1581 (Fed. Cir. 1987)) (internal quotations omitted). To determine whether plaintiff has met this burden, the court must "place itself into the shoes of a 'reasonable and prudent' contractor, and ascertain whether the conditions actually encountered were reasonably unforeseeable on the basis of all the information available to the contractor at the time of bidding," Spirit Leveling Contractors v. United States, 19 Cl. Ct. 84, 94 (1989) (quoting P.J. Maffei Bldg. Wrecking Corp. v. United States, 732 F.2d 913, 917 (Fed. Cir. 1984)).

There are "six indispensable elements" to a differing site condition claim: (1) that the contract affirmatively indicated subsurface conditions upon which the contractor's claims are based; (2) that the plaintiff acted as a reasonably prudent contractor in interpreting the contract documents; (3) that the contractor reasonably relied on the indications of subsurface conditions in the contract; (4) that the subsurface conditions actually encountered differed materially from subsurface conditions indicated in the contract; (5) that the subsurface conditions encountered were reasonably unforeseeable; and (6) that the contractor's claimed excess costs were solely attributable to the materially different subsurface conditions. Weeks Dredging & Contracting, Inc. v. United States, 13 Cl. Ct. 193, 218 (1987).

As noted above, WB claims that the contract documents (including the data revealed by the boring logs and wash probe tests, the character of materials clause, and the contractual characterization of the project as one involving "maintenance" rather than "new work" dredging), would be read by a reasonably prudent contractor as indicating that the sediments to be dredged would consist largely of fine or coarse particles less than one to two inches in size. Pl.'s Resp. 26-33. It further alleges that the actual sediments WB encountered contained significant amounts of large gravel, as well as cobbles and boulders, and that these allegedly unforeseeable conditions resulted in it incurring significant excess costs related to the processing and disposal of the sediments. Pl.'s Resp. 11-13. In support of these claims, it has provided, among other things, the report and deposition testimony of its expert, Dr. James Mahar. Pl.'s Resp. 31; Pl.'s Resp. App. 472-552. In response, the government argues that the contract documents made no representation as to the quantity of oversized material in the sediment, and that WB cannot establish the other elements of a differing site condition claim described above. Def.'s Reply 1-10.

In light of the standards applicable to differing site conditions claims and upon consideration of the parties' lengthy briefs and exhibits, the Court concludes that the "better course" here (Anderson, 477 U.S. at 255) is to deny the cross motions for summary judgment and

proceed to a full trial.  There appear to exist several significant areas of material fact in dispute with respect to the central claim in this case.  These include, among others, a dispute as to what subsurface conditions were "indicated" by the contracting documents in light of the character of materials clause, the test result data, and the characterization of the work as "maintenance" rather than "new work" dredging.[1]  The factual disputes also concern the extent to which the conditions that WB actually encountered differed in a material way from the conditions "indicated" in the contracting documents; whether the conditions encountered were reasonably foreseeable; whether WB actually relied upon the conditions indicated by the contract documents in making its bid; and the extent to which WB's increased performance costs were caused by materially different site conditions.  Pl.'s Resp. 22-55; Def.'s Reply 1-18.  There also exist factual disputes regarding whether WB provided prompt notice of the differing site conditions and, if not, the extent to which the government was prejudiced by any delay.[2]  Pl.'s Resp. 55-60; Def.'s Reply 18-21.

Finally, there are factual disputes regarding WB's other claims.  The parties dispute, for example, what caused the collapse of the Hooper Seawall.  WB claims that the collapse was caused by various "defective specifications" in the contracting documents; the government asserts that the collapse resulted from WB's negligence.  Pl.'s Resp. 73; Def.'s Reply 26.  The Court acknowledges that it is skeptical that the contract provisions WB has cited in support of its claims can be characterized as "design specifications" within the meaning of the case law.[3]  It is

---

[1] To be sure, the interpretation of the contract (and its "indications") involves the resolution of a legal question.  Int'l Tech. Corp., 523 F.3d at 1350.  To resolve that question, the court is required to place itself in the shoes of a reasonable and prudent contractor interpreting the contract documents.  Id.  In this case, the contract documents include what are alleged to be terms of the trade ("maintenance dredging") and technical data such as boring logs, as well as wash probe and other test results.  Thus, the resolution of the legal issue of the meaning of the contract here is intertwined with issues of material fact.  Cf. Metric Constructors, Inc. v. NASA, 169 F.3d 747, 753 (Fed. Cir. 1999) (considering evidence of trade practice and custom, and reasonable reliance on that practice and custom, to show that the pertinent contract specifications were "susceptible to two different reasonable interpretations").

[2] When proving that it encountered a Type I differing site condition, a contractor must establish as a threshold matter that it "promptly, and before the conditions are disturbed, g[a]ve a written notice to the Contracting Officer" of the alleged differing site condition.  FAR 52.236–2(a).  If notice is not provided in writing, the contractor may attempt to proceed on a theory that the government had actual or constructive notice of a differing site condition, and it "may recover if [it proves that] defendant [was] not prejudiced by the lack of [written or oral] notice."  Dawco Constr., Inc. v. United States, 18 Cl. Ct. 682, 693 (1989), aff'd in part, rev'd in part on other grounds, 930 F.2d 872 (Fed. Cir. 1991, overruled by Reflectone, Inc. v. United States, 60 F.2d 1572 (Fed. Cir. 1995).

[3] When a contractor is bound to follow design specifications supplied by the government, the contract carries an implied warranty that the specifications are free from design defects.  White

similarly skeptical of WB's claim based on an alleged breach of the implied duty to cooperate, and its claim for excusable delay, both of which seem to fly in the face of specific provisions in the contract that gave the government the option to direct WB to remobilize and resume work within sixty calendar days from the time the government exercised the option.   Nonetheless, the Court has concluded that its understanding of those claims would be strengthened by the opportunity to consider them after trial in the context of WB's other claims, rather than piecemeal and on the basis of the record developed in connection with the cross motions for summary judgment.   See Ehlers-Noll, GmbH v. United States, 34 Fed. Cl. 494, 499 (1995) (court lacks discretion to grant a motion for summary judgment but it may deny one, even if the court is convinced that the moving party is entitled to such a judgment, where the exercise of sound judicial discretion may dictate that the motion should be denied, and the case fully developed); see also Mildenberger v. United States, 91 Fed. Cl. 217, 257-258 (2010); SunTiger, Inc. v. Scientific Research Funding Group, 189 F.3d 1327, 1333 (Fed. Cir. 1999); Confederated Tribes of Colville Reservation v. United States, 964 F.2d 1102, 1109 (Fed. Cir. 1992).

## CONCLUSION

On the basis of the foregoing, the defendant's motion for summary judgment and the plaintiff's cross motion for summary judgment are denied.

**IT IS SO ORDERED.**

s/Elaine D. Kaplan
ELAINE D. KAPLAN
Judge, U.S. Court of Federal Claims

---

v. Edsall Constr. Co., Inc., 296 F.3d 1081, 1084 (Fed. Cir. 2002).   WB alleges that the statements in the slopes clause of the contract that "side slopes may be formed by box cutting, step cutting, or dredging along the side slope" constitutes a "defective specification."   Pl.'s Resp. 14, 73.   But the slopes clause merely states that "the dredging of side slope material may be necessary to provide the required project channel dimensions (depth and width)" and it does not require the contractor to choose any one of the three suggested methods in order to form slopes.   Def.'s Mot. Summ. J. App. A1016.   The "implied warranty attaches only to design specifications detailing the actual method of performance" and "does not accompany performance specifications that merely set forth an objective without specifying the method of obtaining the objective."   White, 296 F.3d at 1084.   "The amount of discretion provided in the contract to choose means and methods determines whether a particular specification is for design or performance."   Daewoo Eng'g & Constr. Co. v. United States, 73 Fed. Cl. 547, 567 (2006).   At this stage, in light of these standards, WB's defective specifications claims seem to be of dubious merit.